UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAVEDA CLINE-COLE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:18-cv-02288-JRS-TAB ) |
| SCHNEIDER NATIONAL CARRIERS, INC., FIRST HOSPITAL LABORATORIES, INC., MEDEXPRESS URGENT CARE, P.C.- INDIANA, | ) ) ) ) ) ) |
| Defendants. | ) |

**Entry on Motion to Dismiss**

Defendant MedExpress Urgent Care, P.C. – Indiana ("MedExpress") moves to dismiss all four counts of Plaintiff's complaint for failure to state a claim upon which relief can be granted. (ECF No. 36.) MedExpress's motion, now fully briefed and ripe for decision, is **granted in part and denied in part** for the following reasons.

I. **Dismissal Standard**

Federal Rule of Civil Procedure 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary, the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim

1

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

In considering the motion, the court takes the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "When a complaint fails to state a claim for relief, the plaintiff should ordinarily be given an opportunity . . . to amend the complaint to correct the problem if possible." *Bogie v. Rosenberg*, 705 F. 3d 603, 608 (7th Cir. 2013). Nonetheless, leave to amend need not be given if the amended pleading would be futile. *Id.*; *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

## II. Background

Plaintiff Javeda Cline-Cole is a former truck driver for Schneider National Carriers, Inc. ("Schneider"), a U.S. Department of Transportation registered company. (*See* ECF No. 1 at 4.) On September 21, 2016, Schneider ordered Cline-Cole to submit to a random hair follicle drug test. (ECF No. 1 at 5, ¶ 42.) MedExpress provided the

2

hair specimen collection services for Cline-Cole's drug test. At the time Cline-Cole was selected for the drug test, she was wearing a weave of unnatural hair, which covered her scalp. (ECF No. 1 at 6, ¶¶ 50, 52.) Cline-Cole alleges that she asked her supervisor how she could submit to hair follicle testing while wearing a weave of unnatural hair, and her supervisor told her that hair from the arm could be used as an alternative to hair from the scalp. (ECF No. 1 at 6, ¶ 53.)

Once Cline-Cole arrived at MedExpress, Paula Gunning ("Gunning"), a MedExpress employee, collected Cline-Cole's hair follicle sample. (ECF No. 1 at 6, ¶ 55.) Cline-Cole alleges that Gunning refused to collect hairs from any part of Cline-Cole's body other than her head and refused to let Cline-Cole remove part of her weave to allow Gunning to more easily reach Cline-Cole's natural hair. (ECF No. 1 at 6, ¶¶ 56, 58.) As a result, Cline-Cole claims that Gunning clipped a sample from her hair weave rather than her scalp. (ECF No. 1 at 6, ¶ 59.)

Cline-Cole allegedly threatened that she would not sign the acknowledgment form stating that the hair specimen had been obtained properly, and urged Gunning to take a proper hair sample from her scalp. (ECF No. 6, ¶ 61.) Gunning informed Cline-Cole that she would not take a new sample, and that if Cline-Cole refused to sign the form stating that the specimen was properly obtained, the collection would be deemed a refused drug test. (ECF No. 1 at 7, ¶¶ 62-64.) Cline-Cole signed the specimen documentation to avoid a finding of a refused drug test, and MedExpress sent the specimen off to a third-party testing company, Defendant First Hospital

Laboratories, Inc. d/b/a FSSolutions ("FSSolutions"), who then sent the sample to Omega Laboratories, Inc. ("Omega") for testing. (ECF No. 1 at 7, ¶¶ 64-65.)

On September 28, 2016, Schneider informed Cline-Cole that her drug test returned a positive result. (ECF No. 1 at 7, ¶ 66.) Believing these test results to be false, Cline-Cole paid to undergo her own private drug testing the next day. (ECF No. 1 at 7, ¶ 67.) On October 4, 2016, Cline-Cole's private drug test returned a negative result. (ECF No. 1 at 7, ¶ 69.) Cline-Cole provided the results of her private drug test to Schneider and MedExpress, but Schneider informed Cline-Cole that it could not accept these test results. (ECF No. 1 at 7, ¶¶ 70-71.) Cline-Cole then contacted the lab that had originally processed the hair follicle sample and asked it to retest her hair follicle sample, but the lab informed Cline-Cole that it no longer had her sample. (ECF No. 1 at 7, ¶ 72.)

As a result of the positive drug test, Schneider informed Cline-Cole that she must submit to mandatory drug treatment in order to "continue working." (ECF No. 1 at 8, ¶ 79.) Cline-Cole resigned from Schneider rather than participate in drug treatment she felt she did not need. (ECF No. 1 at 8, ¶ 80.) Cline-Cole now alleges that MedExpress, FSSolutions and Omega had a duty to exercise a reasonable degree of care in properly administering Cline-Cole's drug test. (ECF No. 1 at 12, ¶ 116.) Cline-Cole further alleges that MedExpress, FSSolutions and Omega breached this duty of reasonable care by being negligent in the administration of Cline-Cole's drug test and by failing to properly preserve the hair follicle for follow up testing. (ECF No. 1 at 8, ¶¶ 117-118.) Moreover, Cline-Cole alleges that MedExpress's negligence caused

4

Cline-Cole's constructive termination from Schneider, which caused her to suffer reputational, emotional, and economic damage. (ECF No. 1 at 9, ¶¶ 80-81, 89; ECF No. 1 at 12, ¶ 119.) On January 10, 2017, Cline-Cole filed charges against Schneider in the Equal Employment Opportunity Commission ("EEOC"), receiving her Notice of Right to Sue Schneider. MedExpress was not named as a respondent in the EEOC action.

Unlike the allegations in Cline-Cole's negligence claim, there is no reason to believe that her claim of discrimination on the basis of sex (Count I), her claim for violation of the equal pay act (Count II), or her claim of discrimination on the basis of race (Count III), applies or could ever apply to MedExpress, who was not Cline-Cole's employer. Indeed, Cline-Cole alleges against "the Defendant," without any further specificity, employment-related claims under the Civil Rights Act of 1964 ("Title VII") for discrimination on the basis of sex, 42 U.S.C. § 2000e *et seq*. for discrimination on the basis of race, and the Equal Pay Act ("EPA"), 29 U.S.C § 206, *et seq*. Not only does Cline-Cole merely refer to "the Defendant" in these claims, other than in one instance where she alleges "the Defendants" discriminated against her due to her race (ECF No. 1 at 11, ¶ 105), but the facts in each of these claims seem to relate only to her employer, Schneider. Still, at the pleading stage, the Court will construe the complaint broadly, though improbably, to extend the allegations as being made against MedExpress and FSSolutions as well. But, Cline-Cole's Title VII race and sex discrimination claims and her EPA claims against MedExpress cannot proceed, as Cline-Cole fails to allege any facts against MedExpress central to these claims,

5

failing to allege that MedExpress is her employer or that MedExpress discriminated against her at all. Because there are no imaginable set of facts that Cline-Cole could allege that would create an employer-employee relationship with MedExpress, it would be futile to allow her to amend her complaint to try to cure this fatal defect. Thus, Counts I, II and III are **dismissed with prejudice** as to MedExpress.

While Cline-Cole's failure to respond to MedExpress's argument for dismissal of her Title VII and EPA claims provides the independent basis—waiver—for dismissing Counts I-III of Cline-Cole's complaint, the Court need not rely on waiver in light of the uncurable lack of an employment relationship between Cline-Cole and MedExpress. *See [Goodpaster v. City of Indianapolis](#), 736 F.3d 1060, 1075 (7th Cir. 2013)* (plaintiff waived claims by failing to respond to defendant's arguments); *[Alioto v. Town of Lisbon](#), 651 F.3d 715, 721 (7th Cir. 2011)* ("the rule that a person waives an argument by failing to make it before the district court" applies "where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss"); *[Bonte v. U.S. Bank, N.A,](#). 624 F.3d 461, 466 (7th Cir. 2010)* ("Failure to respond to an argument . . . results in waiver"). Similarly, Cline-Cole's apparent failure to exhaust her administrative remedies against MedExpress—by failing to name MedExpress as a respondent in an EEOC action—provides independent reason to dismiss Cline-Cole's employment discrimination claims. *See [Alam v. Miller Brewing Co.,](#) 709 F.3d 662, 666 (7th Cir. 2013)* (citing [42 U.S.C. § 2000e-5(f)(1)](#); *[Tamayo v. Blagojevich](#), 526 F.3d 1074, 1089 (7th Cir. 2008)*. The Court need not and did not rely on this ground for dismissal either.

6

### III.    Negligence (Count IV)

Cline-Cole did respond to MedExpress's argument to dismiss her claim of negligence (Count IV). The elements of negligence are duty, breach of duty, and damages proximately caused by the breach. *See Merchants Nat'l Bank v. Simrell's Sports Bar & Grill*, 741 N.E.2d 383, 386 (Ind. Ct. App. 2000). Cline-Cole alleges that MedExpress had a duty to exercise a reasonable degree of care in properly administering her drug test and argues in her brief that an implied contract existed between her and MedExpress, which imposed upon MedExpress the duty to perform the hair follicle collection "skillfully, carefully, and in a workmanlike manner." (ECF No. 1 at 12, ¶ 116; ECF No. 38 at 5.) It has been recognized that drug testing laboratories owe a duty to collect drug test specimens with care. *Gonzales v. ADT, LLC*, 161 F. Supp. 3d 648, 657 (N.D. Ind. 2016); *see Garlick v. Quest Diagnostics, Inc.*, 2009 WL 5033949, *9-10 (D. N.J. Dec. 14, 2009) (holding that a testing laboratory owed Plaintiffs a duty of reasonable care in promoting and administering alcohol tests under Indiana law); *Stinson v. Physicians Immediate Care, Ltd.*, 646 N.E.2d 930, 934 (Ill. Ct. App. 1995) (recognizing that a "drug-testing laboratory owes a duty of reasonable care to persons whose specimens it tests for employers or prospective employers"); *Duncan v. Afton, Inc.*, 991 P. 2d 739, 740 (Wyo. 1999) (holding that a collection company owes a duty of care to an employee when collecting, handling, and processing urine specimens for the purpose of performing substance abuse testing); *Chapman v. Labone*, 460 F. Supp. 2d 989, 1001 (S.D. Iowa 2006) (concluding that, under Iowa law, a drug testing laboratory owes a duty of care to employees subjected to drug testing because a

laboratory could anticipate the harm that could result to employees as a result of negligent conduct in processing samples). Further, Cline-Cole alleges that MedExpress breached its duty of care when it negligently collected a hair specimen from Cline-Cole's hair weave rather than from her scalp. (ECF No. 1 at 12, ¶ 117.)

MedExpress does not oppose Cline-Cole's complaint on the issues of duty or breach of duty. Instead, MedExpress challenges Cline-Cole's ability to state a claim on the issues of proximate cause and damages. Specifically, MedExpress argues (1) that Cline-Cole cannot show that MedExpress was the proximate cause of her injuries because she voluntarily resigned from Schneider, and (2) that Cline-Cole cannot recover for her alleged reputational damages and for her alleged constructive discharge under Indiana law. (ECF No. 36 at 10-11.) Cline-Cole disagrees.

### A. Proximate Cause

"Under standard negligence doctrine, in order for a defendant to be liable for a plaintiff's injury, the defendant's act or omission must be deemed to be a proximate cause of that injury." *City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1243 (Ind. 2003). "'Proximate cause has two components: causation-in-fact and scope of liability." *Sibbing v. Cave,* 922 N.E 2d 594, 603 (Ind. 2010) (quoting *Kovach v. Caligor Midwest,* 913 N.E.2d 193, 197 (Ind. 2009)). "The scope of liability doctrine asks whether the injury was a natural and probable consequence of the defendant's conduct, which in the light of the circumstances should have been foreseen or anticipated." *Id.*

MedExpress argues that Cline-Cole fails to establish proximate cause with respect to her job loss. (ECF No. 37 at 10.) MedExpress maintains that because Cline-Cole "voluntarily" resigned from Schneider rather than attending drug treatment, Cline-Cole's job loss was not "a natural and probable consequence" of the failed drug test or MedExpress's sample collection. *See Sibbing*, 922 N.E.2d at 693. (ECF No. 37 at 10.) MedExpress further argues that Cline-Cole's "intervening behavior" in challenging the accuracy of her drug test and deciding to quit her job is to blame for her job loss, not MedExpress's sample collection. (ECF No. 44 at 5.) However, "[a]n injury may have more than one proximate cause," so even if MedExpress's alternative causation theories of intervening behavior and voluntary resignation are relevant, these theories do not create grounds for dismissal of Cline-Cole's claim on the present motion to dismiss. *See City of Indianapolis Housing Auth. v. Pippin*, 726 N.E. 2d 341, 346 (Ind. App. 2000).

Accordingly, the Court finds that Cline-Cole has met the *Iqbal* plausibility pleading standard, as she argues that "but for" MedExpress's negligent collection of her hair weave instead of her natural hair, she would not have received the positive drug test result that led to her job loss. (*See* ECF No. 38 at 4.) Further, Cline-Cole argues that the negative drug test result she received from the privately conducted drug test is "sufficient evidence" that MedExpress negligently performed the first drug test by sampling hair from Cline-Cole's hair weave. (ECF No. 38 at 5; ECF No. 1 at 7, ¶ 69.) As a result of MedExpress's alleged negligence, Cline-Cole resigned her position with Schneider rather than participating in drug treatment she did not need. (ECF No. 1

at 8, ¶ 80.) Cline-Cole has therefore pleaded facts making it plausible that (1) her job loss was a "natural and proximate consequence" of MedExpress's alleged negligent hair follicle sample collection; and (2) had it not been for MedExpress's negligent hair follicle sample collection, she would not have been asked to participate in mandatory drug treatment and thus, would not have resigned her position with Schneider. (ECF No. 1 at ¶ 119.)

### B. Damages

Yet, MedExpress asserts that any breach of duty on its part did not proximately cause any compensable injury to Cline-Cole. Specifically, MedExpress argues that Cline-Cole's negligence claim cannot prevail because the reputational damages she alleges are not recognized under Indiana law. (ECF No. 37 at 11.) MedExpress is partially correct, as "loss of reputation damages are not recoverable in a negligence action as a matter of law." *Greives v. Greenwood*, 550 N.E.2d 334, 338 (Ind. Ct. App. 1990) (quoted in *Madison v. City of Evansville*, No. 3:14-cv-00072-TWP-WGH, 2015 WL 9455670, at *1, *6 (S.D. Ind. Dec. 23, 2015)).

But Cline-Cole also claims that due to MedExpress's negligence "she lost her job causing her emotional and economic damage." (ECF No. 1 at 12.) While MedExpress does not challenge Cline-Cole's claim of "emotional distress" damages, the Court notes that such damages are only permitted in two situations, neither of which apply to Cline-Cole's case: (1) where the plaintiff has witnessed or come to the scene soon after the death or severe injury of certain classes of relatives (the bystander rule), or (2) where the plaintiff has suffered a direct impact (the modified impact rule) in a

10

cause of action for negligent infliction of emotional distress. *See [Spangler v. Bechtel, 958 N.E. 2d 458, 466 (Ind. 2011)](.).* The present case is not the type of negligence action for which emotional damages are recognized, as Cline-Cole does not allege negligent infliction of emotional distress, and also fails to allege the requisite facts to satisfy the bystander rule or the modified impact rule. Therefore, Cline-Cole's claims for reputational and emotional distress damages cannot proceed.

With respect to Cline-Cole's alleged damages for "constructive discharge," MedExpress argues that it could not have caused Cline-Cole to be constructively discharged, because "Cline-Cole's employment with Schneider . . . ended when she decided she did not want to submit to . . . drug treatment." (ECF No. 37 at 10.) Constructive discharge occurs (1) when an employee resigns due to alleged discriminatory harassment, or (2) when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated. *See [Chapin v. Fort-Rohr Motors, Inc., 621 F.3d 673, 679 (7th Cir. 2010)](.).* (ECF No. 37 at 10.) MedExpress asserts that Cline-Cole fails to show that she resigned due to any alleged harassment, or that she was "forced to resign because [her] working conditions, from the standpoint of the reasonable employee, had become unbearable." *Chapin*, 621F. 3d at 679. (ECF No. 37 at 10.)

But, a reasonable person could find that Schneider's drug treatment referral was an ultimatum for Cline-Cole to either attend unwarranted drug treatment or be terminated. Attending such unnecessary drug treatment to avoid involuntary termination could have reasonably made Cline-Cole perceive her working conditions as

11

"unbearable." *Id.* (*See* ECF No. 38 at 5.) Therefore, because Schneider informed Cline-Cole that she would not be able to "continue working" unless she participated in drug treatment, the Court finds that she has pleaded facts sufficient for a reasonable fact finder to conclude she felt that her employment would be terminated if she did not participate in drug treatment. As such, Cline-Cole's alleged constructive termination damages claims survive MedExpress's motion to dismiss.

## IV. Conclusion

For the foregoing reasons, MedExpress's Motion to Dismiss (ECF No. 36) is **GRANTED in part and DENIED in part.** Plaintiff's Title VII race and sex discrimination claims, and her Equal Pay Act claim are **dismissed with prejudice** as to MedExpress. Plaintiff's negligence claim survives MedExpress's motion to dismiss.

**SO ORDERED**.

Date: 8/13/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution: by the Court's CM/ECF to counsel of record.